BARRY J. PORTMAN
Federal Public Defender
RONALD C. TYLER
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Brickner

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>JEREMY CHRISTIAN BRICKNER,<br><br>        Defendant. | No. CR 06-0790 CRB<br>No. CR 07-0464 CRB<br><br>DEFENDANT'S SENTENCING<br>MEMORANDUM |

**INTRODUCTION**

Jeremy Brickner has pleaded guilty to one count of impersonating a federal officer and to one count of possessing a firearm after a felony conviction, in violation of Title 18 U.S.C. §§ 913 and 922 (g). The two counts arise out of separate cases in two districts which have been consolidated for purposes of plea and sentencing. Mr. Brickner negotiated a global resolution with the United States Attorney's offices in the Northern and Eastern Districts of California. Pursuant to the plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(c), the parties are jointly recommending a sentence of 21 months in custody. The custodial term would be composed of 6 months on the impersonation count and a concurrent 21 months on the firearm count. For the reasons set forth below, Mr. Brickner asks the Court to impose the negotiated sentence.

//

DEFT SENT MEMO                          - 1 -
*U.S. v. Brickner*, CR 07-0464 CRB

**DISCUSSION**

**I.  Jeremy Brickner Engaged in Lawful Apprehension of Fugitive Aliens, Though He Fully Admits Unlawful Impersonation of a Federal Agent in the Process.**

From 2001 until 2006, Jeremy Brickner worked as an immigration bounty hunter. PSR ¶ 72. In that capacity, he assisted immigration bond agencies. Immigration bond agencies are legitimate businesses operating within the federal regulatory framework governing the release of aliens with pending immigration matters. See, 8 C.F.R. § 103.6

As the Federal Circuit Court recently explained:

> When an alien is detained by the Department of Homeland Security ("DHS"), an immigration bond is posted for the purpose of either securing the temporary release of the alien pending an immigration hearing or ensuring that the alien voluntarily departs the United States on or before a date specified. In posting an immigration delivery bond or voluntary departure bond with DHS, the bonding agent and surety, as co-obligors, guarantee the alien's appearance for an immigration hearing or his voluntary departure. If there is "[s]ubstantial performance of all conditions imposed by the terms of a bond," DHS will cancel the surety bond, "releas[ing] the obligor from liability." 8 C.F.R. § 103.6(c)(3) . . . On the other hand, "when there has been a substantial violation of the stipulated conditions," DHS will declare a bond breached. 8 C.F.R. § 103.6(e). Under the terms of the bond, the amount of the bond is forfeited and payable to the government.

*Gonzales & Gonzales Bonds and Ins. Agency, Inc. v. Dept. of Homeland Sec.* 490 F.3d 940, 942 (Fed. Cir. 2007).

Consequently, immigration bond agencies have a legally-enforceable obligation to apprehend and present to the Department of Homeland Security fugitive bonded aliens.

The present case arises out of Jeremy Brickner's otherwise legal efforts to apprehend fugitive aliens and present them to DHS. As he admitted in his plea colloquy, Mr. Brickner went astray in falsely representing himself to be an agent with the United States Bureau of Immigration and Customs Enforcement (I.C.E.). A review of the offense conduct establishes that, aside from the misrepresentations, Mr. Brickner comported himself lawfully and respectfully. PSR ¶¶ 6-13. At no point did he mistreat the persons whom he took into custody.

As a part of the investigation in this matter, government agents executed a search warrant at Mr. Brickner's residence in Sacramento, California. During that search, Mr. Brickner voluntarily

revealed that he possessed a handgun, which was securely locked in a safe at his home. PSR ¶ 14. Because of a prior felony conviction for carrying a concealed weapon, Mr. Brickner was in violation of federal law. Seizure of the weapon led to the companion case initiated in the Eastern District. Mr. Brickner was not carrying the handgun at any time during his earlier apprehension of the fugitives in this case. PSR ¶¶ 15-16.

### II. The Court Should Impose the Sentence Proposed by the Parties Based on all of the Statutory Goals of Sentencing.

In the aftermath of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), district courts now have available considerable sentencing discretion. In the Ninth Circuit, sentencing courts are to undertake a two-step procedure: first a court is to determine the applicable range under the advisory guidelines. After this starting point, the court is to impose a reasonable sentence, taking into account the various purposes of sentencing, as set forth in Title 18 U.S.C. § 3553(a). *United States v. Mohamed*, 459 F.3rd 979, 985 (9th Cir. 2006) (citing *United States v. Cantrell*, 433 F.3rd 1269, 1279 (9th Cir. 2006)).

The sentence imposed need not hue to the advisory guidelines. Instead, "[D]istrict courts must provide specific reasons for their sentencing decisions, such that the record on appeal demonstrates explicit or implicit consideration of the sentencing factors set forth in § 3553(a)." *Mohamed, supra*, at 985.

Moreover, a sentencing decision outside of the advisory range need not be defined in terms of pre-*Booker* guidelines "departures". The Ninth Circuit has explicitly replaced the old departure scheme with a reasonableness standard based on the sentencing statute:

> We think the better view is to treat the scheme of downward and upward "departures" as essentially replaced by the requirement that judges impose a "reasonable" sentence. The discretion that the district court judge employs in determining a reasonable sentence will necessarily take into consideration many of the factors enumerated in Section 5K of the Guidelines but to require two exercises–one to calculate what departure would be allowable . . . and then to go through much the same exercise to arrive at a reasonable sentence is redundant.

DEFT SENT MEMO                               - 3 -
*U.S. v. Brickner*, CR 07-0464 CRB

*Mohamed, supra*, at 986-87.  The Ninth Circuit has clearly concluded that, instead of departures, any sentence outside of the advisory range is an exercise of discretion:

> [O]ut of a recognition that the concept of formal departures has become anachronistic, we hold that any deviation from the applicable advisory guidelines range will be viewed as an exercise of the district court's post-Booker discretion and reviewed only for reasonableness."

*Id.* At 987.

At the same time, of course, district courts should not completely ignore the former guidelines departure regime, which may be helpful in arriving at a reasonable sentence: "If a district court's reasons for exercising its post-*Booker* discretion coincide with the factors allowed or encouraged under the pre-*Booker* system of departures, such overlap may suggest that the sentencing decision was reasonable." *Id.* (citation omitted).

Mr. Brickner asks that, after weighing all of the pertinent factors, the Court impose a sentence of 6 months on the impersonation count and a 21-month concurrent sentence on the gun count, as requested by the parties.

**III.    The Final Offense Level Should be Twelve as Agreed to by the Parties.**

Mr. Brickner and the government both object to the PSR and both argue that his two counts of conviction should group.  Under U.S.S.G § 3D1.2(b), a court is to group counts if they constitute part of a "common scheme or plan."  As the government pointed out in its memorandum, during previous fugitive recovery work, Mr. Brickner possessed firearms.  PSR ¶ 49 (misdemeanor carrying of a concealed weapon).  The PSR reasoning is incorrect.

The PSR attempts to support its argument by contrasting the grouping rules with the guidelines enhancement for possession of a firearm in connection with another felony under U.S.S.G. § 2K2.1(b)(6).  The PSR author argues that, since the parties agree that the firearm was not used in connection with the impersonation offense (a requirement under subsection (b)(6)), then the parties cannot properly claim that the counts are related for grouping purposes.

DEFT SENT MEMO                           - 4 -
*U.S. v. Brickner*, CR 07-0464 CRB

That argument mixes apples and oranges. The two guideline sections serve different purposes and their language is distinct. The firearms guideline enhancement is meant to punish conduct directly related to firearms possession. That is why the language specifically requires that the weapon have been possessed "in connection with another felony offense." 2K2.1(b)(6). It is correct that no such connection exists here. Mr. Brickner used a taser during his impersonation in San Francisco, not a firearm. PSR ¶¶ 15-16. The gun was not involved and the only evidence of its possession came five months later, in Sacramento.

By contrast, the grouping rules are meant to prevent excessive punishment in a variety of instances, including where a defendant has engaged in "a pattern of conduct or scheme involving multiple underlying offenses." U.S.S.G. Chap. 3 Part D Introductory Commentary. Hence, Section 3D1.2(b) only requires that each count be part of a common scheme or plan in order to group them. Indeed, the impersonation of an agent on May 11, 2006 and the firearm possession of October 5, 2006 were part of a common scheme: being a fugitive recovery agent for several years, sometimes in violation of the law. Although the firearm possession was not directly "in connection with" the felony offense that occurred five months earlier, it was part of the common scheme. The Court should sustain the parties' objection and set the final offense level at 12 instead of 13.

**IV.    Jeremy Brickner's Overall History and Characteristics Support the Parties' Proposed Sentence.**

Jeremy Brickner's biography supports the conclusion that a 21-month sentence will amply address the various statutory purposes of sentencing.

He has significant community ties, having lived in Northern California for most of his 31 years. He excelled in school, graduating in the top 15% of his high school class with a 3.6 G.P.A. He later earned an A.A. degree from Shasta College and a B.S. in Criminal Justice from C.S.U. at Sacramento. In conjunction with his work as a fugitive recovery agent, he completed the Peace Officer Standards and Training course work at Yuba City College.

DEFT SENT MEMO                               - 5 -
*U.S. v. Brickner*, CR 07-0464 CRB

His past employment has included not only many years as a fugitive recovery agent, but an equal period as a substitute teacher for school districts in the Sacramento area.

In regards to his prior criminal record, although Mr. Brickner does not dispute the raw numerical assignment in the PSR, he does believe that the Guidelines overstate the actual seriousness of his record. Such an overstatement could form one of the bases for the sentence requested.

Mr. Brickner suffered a string of minor misdemeanor convictions in his early to mid twenties – one misdemeanor and one felony. PSR ¶¶ 46-48. Thereafter, he was twice convicted for misconduct related to his work as a fugitive recovery agent. PSR ¶¶ 49-50. Although he clearly overstepped legal boundaries in those matters, neither instance involved violence. In fact, none of his prior convictions are violent. What is more, none involved the use or sale of controlled substances. (Mr. Brickner has no history of drug or alcohol abuse).

For his past misdemeanors and one felony, Jeremy Brickner has never spent more than a few months in jail. He has certainly never been in prison. The punitive, deterrent and protective goals of sentencing will be fully satisfied with the parties' proposed sentence.

**V.     Jeremy Brickner Has Fully Demonstrated that He Merits Voluntary Surrender.**

In the months since this case began, several significant events have occurred, related to the question of voluntary surrender.

First, since December 2006, Mr. Brickner has ceased all work as a fugitive recovery agent, pursuant to his release orders in the cases in both districts.

Second, Mr. Brickner has complied with all other terms and conditions of his release including making all court appearances in both the Eastern and Northen Districts of California.

Third, Mr. Brickner has obtained and maintained new employment.

Each of the foregoing demonstrate that Mr. Brickner is a solid candidate for voluntary surrender. Notwithstanding these compelling reasons, the PSR argues otherwise, based on the "nature of the offense and his potential threat to the community." PSR Recommendation, p. 2. There is simply no basis for that recommendation. Mr. Brickner has refrained from any illegal

conduct for the full year of his pretrial release. Any threat that he presented was completely vanquished by the pretrial conditions, which he has fully satisfied.

The United States has also stated that it has no opposition to his voluntary surrender. The Court should respectfully deny the unfounded request to the contrary from the PSR.

**CONCLUSION**

For all the foregoing reasons, Jeremy Brickner asks that the Court impose a sentence of 21 months in custody followed by three years of supervised release. The custodial term would be composed of 6 months on the impersonation count and a concurrent 21 months on the firearm count.

Dated: December 7, 2007

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender


/s/


RONALD C. TYLER
Assistant Federal Public Defender

DEFT SENT MEMO               - 7 -
*U.S. v. Brickner*, CR 07-0464 CRB